We'll hear the next case, Azala v. Barr. I'm sorry? I wasn't sure whether to seat myself first or just start. Well, either way is fine. You don't need to sit down first. Either way is fine. Okay. Okay. Your Honor, David Isaacson for Petitioner Rashida-Azala. I know there's a truism in appellate litigation that too many arguments may mean none of them are strong, but here I think the agency really did make a substantial number of different errors. There are some unifying themes, inappropriate deference by one agency component to another agency component, failure to explain decisions sufficiently, and I think the bottom line across a number of areas is that no adjudicator with a proper understanding of the law has ever evaluated the facts of this case and said that Mr. Azala deserves to be denied relief. Because first, the immigration judge, in our view, incorrectly deferred to this U.S. CIS finding that there had been marriage fraud, whereas under Herrera del Orden NHCFR 1003.10b, the immigration judge was supposed to review that de novo. Then the first wife stated under oath that he had paid her to marry him and that they had never lived as husband and wife. She definitely stated under oath that they'd never lived as husband and wife. I think when you say paid her to marry him, the statement actually says he gave me $2,500 when we began the process for his green card and $2,500 after the first interview was done in the context where he has testified that he gave her more than that. I was summarizing. I was summarizing. It sounds like payment to marry to me. I mean, what do you take from it? That it was a dowry? That it may have been a dowry plus other support. He said in addition to the dowry, he gave her a total of, I think, $60,000 over the course of the marriage as a husband supporting his wife. But a dowry is what the wife brings to the marriage, right? In Islamic law, apparently a mar is what the husband brings to the marriage. And that's canvassed to a great deal in the record. And there was actually written testimony from an expert witness. You're getting deep into the facts. And our ability to review is limited to constitutional and legal errors. We don't retry the merits of the claim. So where are the legal or constitutional errors that would allow us to afford your client relief? Yes, Your Honor. So on the 751 issue, the legal error is the immigration judge not exercising de novo review under Herrera del Orden when she was saying the DHS proved that the Respondent was found to have committed marriage fraud. But that's the USCIS finding she's supposed to be reviewing de novo. And the BIA then ought to have reviewed that immigration judge, in effect, standard of review of USCIS itself de novo, as in Alam v. Whitaker. Whether the BIA reviews the immigration judge's decision de novo or for clear error is a question of law. And that was actually in the discretionary I-751 context under Alam, and it was a reviewable error of law. Similarly, there's an error of law, I think, in the 237a1h waiver context. And this comes up even if the Court does decide that the finding of marriage fraud is not there. But the BIA had it on a — in denying reopening, correct? The BIA first granted reconsideration and then redismissed the appeal. It also denied reopening. When it granted reconsideration and dismissed the appeal, it was relying on the immigration judge's fact-finding, even though that fact-finding had been flawed by an error of law that the BIA now concedes in granting reconsideration existed. The immigration judge incorrectly thought that Mr. Azala couldn't be eligible for a 237a1h waiver if he didn't also have an approved I-130 petition, which he could not get if the first marriage was not bona fide. And wasn't that the error that was corrected on reconsideration, or did I misunderstand? No. The BIA corrected the error regarding eligibility, but then continued to go forward on the factual record that the immigration judge had constructed in reliance on that error in order to make its purportedly de novo determination. So this strikes me as being like Pujovo, where the Seventh Circuit said that it's an error of law that's correctable, where the legal errors that the immigration judge made affected the entire hearing process, including the discretionary determination. Sotomayor, are you taking the position that the BIA was required to review the facts de novo or the ultimate legal question? I'm taking the position that once they reviewed the law de novo and found that the only fact-finder, because you're right, they can't review facts de novo, they can't find their own facts, but if the only fact-finder has been operating under an incorrect impression of the law regarding eligibility, then, as in Pano Seguera, which we cited from the Fifth Circuit, if the record is constructed in a way that the record is impacted by the incorrect legal posture through which the I.J. viewed the case, so here the second wife on discretionary information, you know, is saying that that doesn't go to the question before me, in effect, about the bona fides of the first marriage. Because the I --- You're saying the the -- it should be sent back for the I.J. to redo the factual record? Yes. To redo the factual record, understanding first that Mr. Izala is eligible for 237 A1H relief, even if he did commit marriage fraud and even if he can't get an approved petition. What would change? I mean, there still would be the statement of the first wife that she was paid and that they never lived as husband and wife. And that would go to the thing that needs to be waived. But 237 A1H, as the BIA has now confirmed, can definitely be granted if that's all true. And so they would hear from the second wife about all the discretionary evidence she wanted to present. They would hear from the employer about all the discretionary evidence that he had wanted to present. And in the initial hearing, the immigration judge didn't want to hear from these witnesses because, in her view, they weren't material given that the bona fides of the first marriage had not been established. And this is the issue where the BIA makes this related error of law under the statutory provision regarding the right to present evidence, 240b4b, where they're taking this prior attorney's two words out of context. She says there's nothing new, but it's clear from context, and she later says not on the issue of the 751, it's clear from context that they're talking about the bona fides of the first marriage. And the BIA then says, well, but you admitted there was nothing new, but that's not what she actually admitted. The other jurisdictional point, Your Honor, by the way, in terms of issues of law, on the motions to reopen, our position is that jurisdiction is not restricted to issues of law because under Cucinamada and Mazariegos, the First Circuit's persuasive decision, the jurisdictional bar that attaches to the underlying relief doesn't attach to the motion to reopen. And so there, I think the Court does have full abuse of discretion review regarding the BIA's failure to explain what it was about the new evidence that meant the BIA didn't think it was sufficient to change the I.J. to change the outcome. There as well, though, there's a legal error because the BIA finds itself talking about whether the I.J. reasonably considered these discretionary factors. That's not de novo review. That's clear error review, which the BIA should never be performing on an immigration judge's discretionary determination. So there is an error of law even in the motion to reopen denials, but beyond that, the Court's jurisdiction there is not restricted to errors of law. Thank you. I see my initial time is up. We'll hear from the government. Good morning. Greg Pennington for the Attorney General. There's a lot going on in these three petitions. The genesis of it all was the first marriage. And as the Court's already recognized, the Court doesn't have jurisdiction to review whether Mr. Izala was entitled to a waiver of the joint requirement to file a petition to remove the conditional status of his — the status he got from his first wife. So I'll just briefly address the alleged legal or constitutional errors regarding the good-faith marriage and then move on to the waiver. Now, first, Mr. Izala says that the judge was adjudicating the wrong petition. There were two petitions to remove the conditional status. The first was the joint petition where the wife went in and said that Mr. Izala paid me to get his green card. That marriage ended in divorce. And as a matter of law, according to the Board's decision, a matter of tea, he could no longer pursue a joint petition with that first wife. The marriage ended in divorce. So he had to seek a waiver of the joint petition requirement. Now, it's titled a hardship waiver, but there's three ways they can get the waiver. And all of them are in the full discretion of the Attorney General to grant. So the Court doesn't have jurisdiction to go behind and look at the facts of whether Mr. Izala testified credibly about the first marriage or anything regarding the first marriage. So that's the first alleged error of law, is that the judge should have been adjudicating the joint petition, which she couldn't have. So the second error is whether the Board applied the correct standard of review in reviewing the waiver to the joint petition requirement. And it did. Elom doesn't change that. Elom said that it's a mixed question of fact and law that the Board has to review. But the Board's decision states, first, it found the credibility determination not clearly erroneous and several other factual findings. And then it affirmed the ultimate conclusion to deny the waiver of the joint petition requirement. So moving on to the waiver. So he's not eligible to remove the conditional status because he did not enter into a good faith marriage. So he needed a waiver of the ground of removability. And that's the fraud waiver under 1227A1H. Again, this Court doesn't have jurisdiction to review that discretionary determination. That's what the Court held in Ahmed v. Holder. So looking at the legal errors there, the only one I really see is that the immigration judge allegedly restricted the testimony and didn't let the second wife testify to the hardship or any other discretionary factors in the positive realm. The record just doesn't bear that out. He was allowed to testify. And again, we're operating on the premise that he has to show a constitutional claim. So due process comes in here. The statute only requires a reasonable opportunity to present evidence. Common law procedural due process requires the same, a reasonable opportunity to present evidence. And he was given that opportunity. During his direct examination, the judge never restricted what he could testify about. He was allowed redirect. And they never said, we want to call the wife. So there's just this one statement that the judge said, well, nothing that the second wife is going to testify to is going to go towards the original waiver to the joint petition. And the lawyer said, no, nothing new. But that was the lawyer's opportunity to say, nothing new on the waiver to the joint petition, but I'd like to submit testimony on the discretionary factors for the fraud waiver. She never did that during direct examination or on redirect or when the judge asked if there was any more testimony. The government would submit that that's a reasonable opportunity to present the evidence she wanted to present. And even if, she would have to show some sort of prejudice. And if you look at the witness list that the attorney below submitted, it said what the second wife was going to testify to. And everything in the immigration judge's decision reflected that she credited all of that. She credited every, in fact, she ticked all the positive factor boxes in the discretionary determination. It was in her discretionary view that the adverse factors outweighed all of that. So in her view and on DeNova review, according to the board, the original fraud combined with coming into immigration court and testifying and not just saying, yes, I messed up, but I still would like to remain, continued to testify that this marriage was entered into in good faith. And the immigration judge just didn't believe that. And the board on DeNova review said that, yeah, those adverse factors are pretty serious. And in fact, Matter of TJAM says that those adverse factors are perhaps the most serious. How do you respond to the argument that the IJ made a mistake about eligibility and therefore should be required to create a new factual record so that when he's not operating under an error? There's just no evidence in the records reflected that influenced the immigration judge's decision. She made two separate findings, a statutory eligibility finding, which the board disagreed with on reconsideration. And she said, well, even if you're eligible, I'm going to deny this as a matter of discretion. So those are two alternate findings. There's nothing to suggest that the immigration judge said, well, because you're statutorily ineligible, I'm also going to weigh that into my factors in the discretionary context. There's just nothing to show that. And recreation of a new record would have no benefit. And I would say on that point is the board is the ultimate arbiter. The Attorney General's regulation says that the board has the final say on discretion. And the board says no in the original decision. It says no on the first motion to reopen, and it says no on the second motion to reopen. He submitted a lot of evidence to show that he's a fine citizen, he's doing well, he has children, he has a job, he pays his taxes. But in the board's view, the discretionary factors on the adverse side of the column are just too much. And ultimately, it's the board's decision. So we don't have to get into whether the second motion to reopen was number barred or anything like that. Ultimately, it's a discretionary determination and jurisdiction to dictate the result in all three of these petitions. If there's no questions, thank you. Roberts. Yes, Your Honor. With respect to one thing I noted that we never heard the government or the BIA mention in terms of hardship factors, and this can also be an error of law under Mendez, is the adverse country conditions evidence and the fact that he had more than one child, by the way. The board is talking about the one son, not mentioning country conditions at all. So that can be another kind of error of law under Mendez. But also, in terms of this idea that there's no evidence in the record that this affects the judge's determination, there's this whole conversation, and this is a 622 to 624 of the record in 18658. You know, the witnesses that you have, I don't know that they would address any of the government's concerns. And the I.J. is saying with respect to the employment and the supervisor's availability to be there by phone, it doesn't hinge on this. I think to the extent that one ought to give some benefit of the doubt when the fact finder is operating under a clear legal error, it's at best unclear, taking I think the view most favorable to the government, whether this affects the construction of the record. And to the extent that my opponent is suggesting that counsel should have insisted, well, Judge, I want to call this witness even if you believe it's irrelevant, that's not something that the agency suggested below, perhaps because they don't want people calling witnesses that immigration judges have indicated are irrelevant. So I think there's a Chenery problem with relying on that. Going back for a moment to matter of T, we've challenged matter of T as a matter of law as inconsistent with the effective date provision. That's the case that says that my client couldn't have pursued the joint petition, and the government's only defense is that the board couldn't have overturned matter of T, which, of course, it could have. And even in matter of T, they remanded for pursuit of the waiver application. The other thing that I noticed was not addressed, I think, at all by my opponent, or at least very much, is the motion to reopen petitions with respect to the new evidence, where I think the only argument that's being made is, well, the Board of Immigration Appeals has said, bottom line, this isn't enough. But there are two problems with that. One is that they haven't explained why it's not enough, which, if we're correct that this Court has jurisdiction under Cucina, Amada, and Mazariegos, means that under cases like Precetay and Sanchez and Kijanjau and Anderson, it's not enough to just say this isn't enough to give that conclusion. You have to explain why the evidence isn't enough, or else it's an abuse of discretion. The other problem is that the board didn't say, we are taking responsibility for the determination that this isn't enough, that he still should lose. They said the immigration judge reasonably considered the issue of discretion. That is reasonably considered is not a de novo wording. That is not something the Board of Immigration Appeals should ever find itself saying about an immigration judge's discretionary determination. And if they have, that is an error of law. They're applying the wrong standard of review, and that's subject to the Court's jurisdiction, just like Elam, just like Kaplan in the Third Circuit, just like Kusam F in the Sixth Circuit. If the board is giving deference to something that it shouldn't be or not giving deference to something that it should be, that's a question of law. And that was clearly done on the second motion to reopen, which, for the reasons we've explained, isn't number-barred. Whether it's number-barred is a question of law. It was also, arguably, done on the first motion to reopen. That's the sort of 13-strike-of-the-clock problem. If you look back at what the BAA said in the decision under review in 18658, it's also not clearly, in light of the second decision, actually saying de novo. We find that as a matter of discretion, even assuming all this new evidence is true, he should lose. Roberts. We will reserve decision.